STANDARD SAND & GRAVEL CO. v. CITY OF NEW YORK et al.

(Supreme Court, Appellate Division, First Department. February 18, 1916.)

1. MUNICIPAL CORPORATIONS ⬳373—PUBLIC IMPROVEMENTS—PRIORITY OF LIENS—"INCUMBRANCES."

Under Lien Law (Consol. Laws, c. 33) § 13, providing that a lien for materials furnished or labor performed in the improvement of real property shall have priority over advances made upon any mortgage or other incumbrance thereon after such filing, an assignment of a fund in the hands of a city, created to pay for a public improvement, made by the contractor to secure advances to enable him to perform the contract, was not absolute, but created a lien upon the fund, so that it was an "incumbrance," and liens for materials furnished had priority over the advances made by the assignee after the time of filing of the liens; there being no ground for distinction between private and municipal contracts in applying the law.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 913; Dec. Dig. ⬳373.

For other definitions, see Words and Phrases, First and Second Series, Incumbrance.]

2. STATUTES ⬳183—CONSTRUCTION OF REMEDIAL STATUTE.

The Lien Law, being a remedial statute, does not permit confinement to strict legal definition of the terms used, but requires that the intention of the Legislature be discovered and given effect, if any reasonable construction will permit it.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 261; Dec. Dig. ⬳183.]

3. MUNICIPAL CORPORATIONS ⬳373—IMPROVEMENTS—COMPENSATION—LIEN—ASSIGNMENT—PROPERTY RIGHT.

The right of a contractor on a municipal improvement project to be paid for the work done under his contract is a property right, so that his assignment of the money due or to become due thereunder created only a lien on the fund, which would ripen into a right of collection by the assignee only in case he failed to pay the advances for which the assignment was given.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 913; Dec. Dig. ⬳373.]

Laughlin and Page, JJ., dissenting.

---

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from Special Term, New York County.

Action by the Standard Sand & Gravel Company against the City of New York and others, impleaded with the Royal Company of New York. From a judgment subordinating the claim of defendant Royal Company to the liens of plaintiff and defendants Fredenburg & Lounsbury, and adjudging void the lien of the defendant Hildreth Granite Company, the defendants Royal Company of New York and Hildreth Granite Company appeal. Affirmed.

Argued before CLARKE, P. J., and McLAUGHLIN, LAUGHLIN, SCOTT, and PAGE, JJ.

L. E. Warren, of New York City, for appellant respondent Royal Co. of New York.

Frank M. Avery, of New York City, for appellant Hildreth Granite Co. and respondents Fredenburg & Lounsbury.

Norman P. S. Schloss, of New York City (Alfred L. Rose, of New York City, on the brief), for respondent Standard Sand & Gravel Co.

SCOTT, J. [1] The trial court found, and the correctness of this finding is unquestioned, that the assignment by the contractor to the Royal Company of all moneys "due or to grow due" by virtue of the contract between the contractor and the city of New York, although absolute in form, was given to and accepted by the Royal Company as security for advances made and to be made by it to the defendant. In other words, it was intended to create, in effect, if not in legal parlance, a lien or mortgage upon the fund set apart or appropriated by the city of New York for payment of the sums to be earned under the contract.

The crucial question in the case then is, as pointed out by Mr. Justice LAUGHLIN, whether such an assignment, in the case of a municipal contract, should be held to fall within the meaning of the words "mortgage and other incumbrance," as used in section 13 of the Lien Law. The portion of the section material to the question reads as follows:

"A lien for materials furnished or labor performed in the improvement of real property shall have priority over a conveyance, judgment or other claim against such property not recorded, docketed or filed at the time of filing the notice of such lien, over advances made upon any mortgage or other incumbrance thereon after such filing. * * *"

[2] I freely concede, if the Legislature intended by this clause to give to laborers or materialmen priority over sums advanced, after the filing of the lien, upon a general assignment of moneys due and to become due under the contract, that the language adopted to express that intention was not happily chosen, and the words "mortgage" and "incumbrance," when strictly construed, are not appropriate to such an assignment, even if intended merely as security for future advances. But in construing a statute, and especially a remedial one like the Lien Law, we should not always confine ourselves to the strict legal definition of the terms used, but are at liberty to seek out the intention of the Legislature and to give effect to that intention, if by any reasonable construction the language used will permit us to do so.

It is quite obvious, as has been repeatedly pointed out by this court and the Court of Appeals, that it has been the intention of the Legislature to assimilate, so far as practicable, the regulations as to liens in respect to private real property and liens in respect to improvements upon public municipal contracts. Brace v. City of Gloversville, 167 N. Y. 452, 60 N. E. 779; Herrmann & Grace Co. v. City of New York, 130 App. Div. 531, 114 N. Y. Supp. 1107; Id., 199 N. Y. 600, 93 N. E. 376. One difference which necessarily exists is as to the subject-matter to which a lien applies. In the case of private real property the lien applies directly to the property improved; but in the case of a public improvement, since it would be intolerable that public property should be encumbered with liens in favor of contractors and others, it is provided that the lien shall attach to the moneys in the hands of the municipality set apart or appropriated for the payment of the sums to become due upon the contract for the improvement, and a corresponding difference is made as to the offices in which liens, claims, assignments, and incumbrances of every nature are to be filed or recorded.

In short, in the case of a public improvement the money to become due from the municipality under the contract for the improvement is substituted for and stands in the place of the real property affected by the improvement. In all other respects the regulations affecting the two classes of liens are similar. The history of the Lien Law and its development shows a great and constantly increasing degree of consideration by the Legislature for the claims of laborers and materialmen, one evidence of which is to be found in section 13 itself, which as to liens upon real estate gives to liens for labor and materials unquestioned preference over advances made after the filing of such liens, no matter how absolute in form the encumbrances upon the real estate may be. It seems quite unreasonable to suppose that it was the intention of the Legislature to extend to laborers and materialmen engaged upon public improvements less protection than it clearly extended to the same persons engaged upon private work. No plausible reason suggests itself why such an invidious distinction should have been intended, and there seems to be every reason why it should not.

[3] Does the language of section 13 of the Lien Law constrain us so to construe it as to discriminate against laborers and materialmen engaged upon public improvements? In my opinion it does not. Conceding that the word "incumbrance" is not a happy one to express the idea of a lien upon a fund of money, still it may, I think, be properly construed in this case to include such a lien. Undoubtedly the right of the contractor to be paid for the work done under the contract was a property right. The assignment of the money due or to grow due thereunder created a lien upon the fund, which would ripen into a right of collection by the assignee only in case the assignor failed to repay the advances. In this sense the assignment may properly, I think, be considered as an "incumbrance" upon the fund; that is to say, a claim upon it which would stand in the way of

a collection and enjoyment of the fund by the contractor until he had removed the lien by payment.

The word "incumbrance" is generally used in the books with reference to real estate, and has been defined as a right or interest in land which may subsist in another to the diminution of the value of the land to the owner. Wetmore v. Bruce, 118 N. Y. 319, 23 N. E. 303; Dieterlen v. Miller, 114 App. Div. 40, 99 N. Y. Supp. 699. In a case like this, wherein the fund in the hands of the municipality stands in the place of land, I see no reason why the word "incumbrance" as above defined may not be applied to an assignment of moneys due and to become due when such assignment is given to secure advances, future as well as present. Clearly, under the findings of the trial court, the assignment was not absolute, but was merely intended to create a lien upon the fund in the hands of the city, and a lien is always an incumbrance. Wilson v. Wilson, 120 App. Div. 581, 105 N. Y. Supp. 151. I find no insuperable difficulty in holding that an assignment of the moneys due or to become due to a contractor for a municipal improvement, given as security for moneys to be advanced, constitutes a lien upon the fund for the amounts advanced, and is an "incumbrance" upon the fund within the meaning of section 13 of the Lien Law, and consequently that liens for materials furnished or labor performed are entitled to priority over advances made by the assignee after the time such liens are filed. Only by this construction can laborers and materialmen be afforded the same protection as respects public works that they enjoy in respect to private work. Any other construction would enable a dishonest contractor to work a grave injustice to those who furnish him labor and materials. Of course, the assignment by a contractor for a private improvement of the moneys due or to become due under his contract offer no analogy, so far as concerns mechanics' liens, to a like assignment by a contractor for a public improvement. In the former case the lien attaches to the land itself, and the assignment of the money to be earned under the contract cannot affect the rights of the lienor. But in the latter case the money to be earned is the only thing to which a lien can attach, and an absolute assignment in advance of that money defeats the lien by destroying that to which it may attach.

The judgment appealed from should be affirmed, with costs to the respondents Fredenburg & Lounsbury as against the Royal Company, and to said Royal Company as against the appellant the Hildreth Granite Company.

CLARKE, P. J., and McLAUGHLIN, J., concur.

LAUGHLIN, J. (dissenting). On the 23d day of July, 1913, the city of New York entered into a contract in writing with the Acme Asphalt & Granite Paving Company for regulating and repaving Second avenue from Sixtieth street to Sixty-First street, and from Sixty-Third street to Seventy-Fourth street, borough of Manhattan, New York. An abstract of the contract contained in the record shows that the estimated cost of the work was $90,870, and that by the terms of the contract 90 per cent. was to be paid in installments on engi-

neer's certificates as the work progressed, and the balance was to be paid on engineer's final certificate. The contract was completed and accepted on the 16th day of February, 1914, and the total amount earned by the contractor and due from the city was the sum of $86,-438.98.

On the 14th day of August, 1913, the Acme Company, as party of the first part, and the Royal Company, as party of the second part, entered into a contract in writing, under seal and acknowledged, reciting that said contract for regulating and repaving Second avenue had been let to the Acme Company; that the Acme Company was desirous of procuring financial assistance to "help it carry out said contract and to pay for material and labor and expenses to be incurred in carrying out and completing said contract"; and that the Royal Company had agreed to procure and advance money to the Acme Company for that purpose, and the Royal Company thereby agreed to advance to the Acme Company the sum of $85,000 "for the purpose of enabling" it to go on with said work, and to advance said amount in such sums at such times as might be required by the Acme Company, and the Acme Company thereby agreed to pay the Royal Company a commission of 5 per cent. "upon all sums so procured and advanced." The final paragraph of the agreement obligated the Acme Company to assign, transfer, and set over to the Royal Company "all sums due and to grow due on said contract for paving, between first party and the city of New York hereinbefore referred to, the amount of eighty-five thousand ($85,000) dollars."

The Acme Company on the same day duly executed and delivered to the Royal Company an assignment, also under seal and duly acknowledged, of the "money due or to grow due" to it under and by virtue of said contract with the city, and duly constituted and appointed the Royal Company its true and lawful attorney irrevocably in its name, place and stead, to ask, demand, sue for, attach, levy, recover, and receive "all such sum and sums of money which now are or may hereafter become due, owing, and payable for or on account of all or any of the accounts, dues, debts, and demands above assigned," and gave and granted unto the Royal Company full power and authority to perform all and every act and thing whatsoever requisite and necessary, as fully to all intents and purposes as it might or could do, with full power of substitution and revocation. This assignment was approved by the commissioner of public works of the city on the 5th day of September, 1913, and was duly filed with the comptroller on the 8th day of the same month. It is recited in the assignment that it was made for a good and valuable consideration, and the evidence shows that the sum of $2,000 was advanced under the agreement by the Royal Company to the Acme Company on the day on which it was executed. The Royal Company made further advances to the Acme Company from time to time thereafter until the 14th day of February, 1914, two days before the completion and acceptance of the work by the city. Its advances to the Acme Company aggregate the sum of $85,614.88, which is $824.10 less than the total amount for which the city became liable under the contract with

the Acme Company. The Royal Company received from the city, by virtue of the assignment, $53,099.05, which was all that had been paid by the city prior to the commencement of the action, leaving a balance of $33,339.93 held by the city.

The trial court found that the balance due and owing to the Royal Company from its assignor for moneys advanced and for commissions prior to the commencement of the action was $36,796.57. The trial court found and held that the assignment was not intended to be absolute, but was merely intended as security for moneys advanced under the agreement; and the decision of the trial court proceeded upon the theory that the assignment in no manner protected the as- · signee with respect to which *commissions* as against subsequent lienors. The agreement did not, by express terms, obligate the Acme Company to assign the moneys due and to grow due from the city as security for the commissions to which the Royal Company was entitled, or for advances in excess of $85,000; but that is of no importance, for when the Acme Company came to make the assignment it did not limit it to $85,000, or to security for the moneys advanced, but made an absolute assignment of all the money due or to grow due, and while the Royal Company might not, as between it and the assignor, be entitled to any surplus of the moneys collected on the contract under the assignment over the amount advanced and its commissions, it is manifest that it would, as against its assignor, be entitled to collect and retain sufficient to reimburse it for moneys advanced and for its commissions as well (see Uvalde A. Paving Co. v. City, 191 N. Y. 244, 84 N. E. 83), and that would exhaust the entire fund. The trial court held that the rights of lienors were superior to the rights of the assignee with respect to advances made *after* the filing of the respective liens. The validity of the assignment is not questioned.

The controlling question in the case, therefore, is presented by the contention of counsel for the Royal Company, appellant, that the assignment gave it the right to the entire amount of the moneys due and to grow due thereafter on the contract, and that there was no fund to which the liens subsequently filed could attach; and if he be right in that contention it will not become necessary to consider any other question with respect to the rights of lienors, for no lien was filed until long after the filing of the assignment.

Counsel for the lienors contend that an assignment is an *incumbrance,* within the contemplation of the provisions of the first sentence of section 13 of the Lien Law (chapter 33, Consol. Laws; chapter 38, Laws 1909), which, so far as material, is as follows:

"A lien for materials furnished or labor performed in the improvement of real property shall have priority over a conveyance, judgment or other claim against such property not recorded, docketed or filed at the time of filing the notice of such lien, over advances made upon any mortgage or other incumbrance thereon after such filing. * * *"

That is the theory upon which the judgment at Special Term was entered. The provisions of the first sentence of said section 13, in so far as they relate to advances on a mortgage, had their origin in section 5 of chapter 342 of the Laws of 1885, which related to liens

upon private property only. Said section 5, so far as material, provided as follows:

"The liens provided for in this act shall be preferred as prior liens to any conveyance, judgment or other claim which was not docketed or recorded at the time of filing the notice of lien, * * * and prior to advances made upon any mortgage on the premises after the filing of such notice of lien. * * * "

This provision, without any change in its phraseology, was continued in the section as amended by chapter 915 of the Laws of 1896. The phraseology was changed to the form in which it now appears by the statutory revision commission in 1897, who in a preliminary note to the chapter (chapter 418, Laws of 1897), state that they have not attempted to change radically the existing law, as contained in the general act of 1885, but that some "new matter has been inserted, the object and effect of which are stated in the notes to the various sections." Section 13 of the revision, as recommended by that commission and enacted by the Legislature as chapter 418 of the Laws of 1897, contains the provisions in question, and is the same as the present section 13 of the Lien Law; and the revisors in their note to section 13 as recommended in 1897 say that it was taken from the Laws of 1885, chapter 342, § 20, "and section 5, first sentence, as amended by Laws 1896, c. 915," and that the provisions thereof have been here re-enacted without change, save by adding the second sentence, which was new and is the same as the second sentence of the present section, but has no bearing on the question presented by the appeal.

The revisors and the Legislature are chargeable with knowledge that the filing of assignments was regulated by section 15 of the same revision, and had been regulated as to private improvements by chapter 915 of the Laws of 1896. It is probable, I think, that the word "assignments" would have been used in this section, if it had been intended to embrace them therein. It is manifest, therefore, that the revisors did not suppose that, by the change which they made in the phraseology in attempting to revise the existing law, they were extending a statutory provision, which theretofore had been confined to mortgages, to an assignment of money due or to grow due, which is an instrument of an entirely different nature; and the attention of the Legislature was not drawn by the report of the statutory revision commission to the fact that there was such a change in phraseology as might thus extend the scope of the statute. It is fairly to be inferred from these facts, I think, that if the commission understood that by adding after the word "mortgage" the words "or other incumbrance" they were extending the scope of the statute to embrace any instrument other then one in the *nature of a mortgage,* such as a building loan agreement provided for in section 22, and contracts for the improvement of real property with the option to purchase (see second sentence of section 13 of Lien Law, added by revision of 1897), and to include *assignments* of money due or to grow due from the contractor, which clearly had not theretofore been included, they would by a note to the section have so informed the Legislature; and

in the circumstances I am of opinion that there was no legislative intent, in enacting a revision as thus recommended, to extend the application of the statute with respect to moneys to be advanced on a mortgage, which necessarily had to be made by the *owner* of the realty, to moneys to be advanced under an assignment which could be made only by the *contractor*.

But if the history of the Legislature left room for doubt with respect to this question, I am of opinion that it is resolved in the same way by a consideration of the effect of an assignment made by a contractor, and of the decisions with respect thereto, and of the other statutory provisions concerning the filing thereof. It may be well to bear in mind that there is nothing in the Lien Law with respect to either public or private improvements which prevents the payment of the entire contract price to the contractor in advance, if the parties so agree, and, in the case of a public improvement, if the municipal corporation were authorized so to do. Van Kannell Revolving Door Co. v. Astor, 119 App. Div. 214, 104 N. Y. Supp. 653. See also Harvey v. Brewer, 178 N. Y. 5, 70 N. E. 73. Prior to the enactment of chapter 915 of the Laws of 1896, the Legislature had not attempted to legislate with respect to assignments by contractors of moneys due or to grow due on contracts for either public or private improvements, and no formality was required with respect to such assignments; and therefore, if made for value, they were sustained, even though they rested in parol. Lauer v. Dunn, 115 N. Y. 405, 22 N. E. 270; White v. Livingston, 69 App. Div. 361, 75 N. Y. Supp. 466; Yorke v. Conde, 61 Hun, 26, 15 N. Y. Supp. 380; Bates v. Salt Springs Nat. Bank, 157 N. Y. 322, 51 N. E. 1033.

The Legislature by said chapter 915 of the Laws of 1896, which related only to contracts for *private* improvements provided in effect that no assignment of any contract for the performance of any labor or services or the furnishing of any materials for such improvements, *or of the moneys* due or to become due therefor, or any part thereof, *or any order* drawn by any contractor or subcontractor for the payment of such moneys, shall be valid until the contract, or a statement containing the substance thereof, and such *assignment*, or copies thereof, or a copy of such *order*, shall be filed in the office of the clerk of the county wherein the premises are situated. Chapter 444 of the Laws of 1897 prohibited the assignment of a contract with respect to a *public* improvement, or of any right, title, or interest therein, without the previous consent in writing of the department or official awarding the contract; but it was held in Brace v. City of Gloversville, 167 N. Y. 452, 60 N. E. 779, that this did not prohibit an *assignment* of moneys due or to grow due under the contract, and that section 15 of the Lien Law, being chapter 418 of the Laws of 1897, which had been enacted shortly before and at the same session at which said chapter 444 was enacted, required the filing in the office of the county clerk of contracts, *assignments, and orders* related to contracts with respect to *public* as well as *private* improvements.

The Legislature thereafter, by chapter 360 of the Laws of 1907, added to section 15 of the Lien Law the provision, found therein still, to the effect that *assignments* of contracts for public improvements

and of *orders* with respect thereto, and the contracts or the substance thereof, should *also* be filed with the comptroller or chief fiscal officer of a municipal corporation; and by chapter 692 of the Laws of the same year, the Legislature thereafter added section 15a, which this court in Contractors' Supply Co. v. City of New York, 153 App. Div. 60, 138 N. Y. Supp. 242, held superseded the provisions of section 15 with respect to contracts relating to public improvements. Section 15a became section 16 of the Lien Law by Consolidated Laws, chapter 33 (Laws of 1909, chapter 38); and it was repealed by chapter 450 of the Laws of 1911, and re-enacted by chapter 873 of the Laws of the same year.

It was held in Kane v. Kinney, 174 N. Y. 69, 66 N. E. 619, that a general assignment for the benefit of creditors by a contractor did not take priority over liens subsequently filed. The theory of that decision was that such an assignee stood in the place of the assignor with respect to liens. In Harvey v. Brewer, supra, a subcontractor who had filed a lien took an assignment of moneys due and to grow due the contractor, and the assignment was accepted by the owner of the property, which was being improved, and on the strength thereof the lien was discharged. That was held to be tantamount to a payment by the owner, and it was also held that any payment made in good faith by the owner before a lien was filed was valid, and that it was not essential that the assignment should be filed as required by section 15 of the Lien Law to limit the rights of subsequent lienors. It has also been held that an assignment without acceptance is valid as against the general assignee of the contractor, although the assignment was not filed until after the general assignment had been made. Armstrong v. Chisolm, 99 App. Div. 465, 91 N. Y. Supp. 299.

It was competent for the Legislature to regulate the making of such assignments, and the effect of the statute quoted declaring them void if not filed was to render them wholly void unless there was a compliance with the requirements of the statute. (Manhattan Commercial Co. v. Paul, 111 N. E. 76, Court of Appeals, Law Journal, Jan. 19, 1916); but no right was given to the assignee to file a mechanic's lien for the moneys assigned to him (Uvalde Asphalt Paving Co. v. City of New York, 191 N. Y. 244, 84 N. E. 83). See also Troy Public Wks. Co. v. City of Yonkers, 68 Misc. Rep. 372, 124 N. Y. Supp. 307. Nor was such an assignee with respect to a private improvement given a lien upon real estate, as was a mortgagee who had advanced or might subsequently advance moneys under the mortgage. The filing of the assignment is notice to subsequent lienors as well as to the owner of the real estate to be improved of the rights of the assignee, which, however, are otherwise left to rest on the contract constituting the assignment, as before. As to private contracts it is therefore quite clear that the word "incumbrance" as used in the statute does not include an assignment, for, as has been seen, the assignee was given no lien upon the land or right by virtue of the assignment to file a mechanic's lien against the same, and in such case there is no fund in a strict sense, for the assignee could only enforce his assignment by an action against the owner of the realty, on the theory that the moneys covered by the assignment were due from such owner to the assignor, and

therefore, with respect to private improvements, the assignment in no sense constitutes a lien or incumbrance upon or against the land, excepting theoretically, owing to the fact that it limits the rights of subsequent lienors to the unassigned balance due or to grow due to the contractor.

The lienors contend that the provisions of section 13 of the Lien Law should be construed as applying to contracts for both private and public improvements, on the theory that the Legislature, in section 23 of the Lien Law, has declared that the provisions thereof are "to be construed liberally to secure the beneficial interests and purposes thereof," and the courts construe the provisions of the Lien Law as applicable to both classes of improvements where the language employed is susceptible to that construction. See Brace v. City of Gloversville, supra, and Herrmann & Grace Co. v. City of New York, 130 App. Div. 531, 114 N. Y. Supp. 1107, affirmed 199 N. Y. 600, 93 N. E. 376. If, as I view it, the provisions of that section do not apply to an assignment of moneys due or to grow due under a contract for a private improvement, then, if that argument should prevail literally, it would result in a construction that the provisions of the section do not apply to an assignment of moneys due or to grow due under a contract for a public improvement. But for the reasons already stated I find no evidence of legislative intent that the word "incumbrance" should apply to assignments with respect to public improvements, as does the word "mortgage" to private real property which is to be improved. There is much force in the argument that the same reasons exist for making a claim to advances under an assignment subordinate to liens subsequently filed as to making advances under a mortgage subordinate to such liens; but in the circumstances that is a matter, not for judicial, but for legislative, consideration.

The trial court found the balance due to the Royal Company from its assignor both for advances and for commissions, but, instead of directing a personal judgment therefor, provided in the conclusions of law that the Royal Company might apply to the court at the foot of the decree to be entered for judgment against its assignor for the amount of such deficiency. The Royal Company did not appeal from this part of the decree, and its assignor did not appear on the appeal. Counsel for the Royal Company requests this court to grant the deficiency judgment; but, since it has not presented that question by the appeal, I think it should be left where the decision of the trial court left it, without a modification of the judgment in that respect.

It follows, therefore, that the judgment, in so far as appealed from by the Hildreth Granite Company, should be affirmed, and as to the appeal of the Royal Company the judgment should be modified, by directing the payment of the balance of the fund to the appellant the Royal Company, with costs to said appellant against the appellant the Hildreth Granite Company and the respondents the plaintiff and Fredenburg & Lounsbury, and that the findings and conclusions of law of the trial court be modified accordingly.

PAGE, J., concurs.