THE LACKAWANNA STEEL CONSTRUCTION COMPANY, Plaintiff, *v.* THE LONGACRE ENGINEERING AND CONSTRUCTION CO., INC., and Others, Defendants.

Supreme Court, Erie County, March 22, 1934.

*Stanley & Gidley* [*Arthur E. Otten* of counsel], for the plaintiff.

*Merwin, Paul, Lesswing & Hickman* [*Wortley B. Paul* of counsel], for Umland Brothers, Inc.

*Vincent A. Tauriello, Assistant Attorney-General,* for the People of the State of New York.

*Hyman Karnofsky,* for J. M. Hoadley, Inc.

*William R. Daniels,* for the Italian Mosaic & Marble Co., Inc.

*Robert M. McCormick* [*Charles C. Desmond* of counsel], for the Firemen's Fund Indemnity Company.

*Maloney, Lane & Stengel* [*Stanley H. Montfort* and *John F. Lane* of counsel], for the defendants George J. Summers and others.

*Francis J. Moynehan,* for the Pittsburgh & Freeport Company, Inc.

*Brunstrom & Fletcher,* for the Chall Lumber Company.

*Jude & Johnson* [*Adolph F. Johnson* of counsel], for George D. Cornell Company.

*Edward T. Ahlstrom,* for the Clark Hardware Company and The Ornamental Iron Works.

CHARLES B. WHEELER, Official Referee. This action is one for the foreclosure of a mechanic's lien on a fund in the hands of the State growing out of the erection of a State armory at Jamestown, N. Y.

The fund subject to distribution is $14,970.09.

The defendant The Longacre Engineering and Construction Company, Inc., was the general contractor with the State for the

erection of the armory in question. It completed its contract and the State has accepted the work. The Longacre Company, however, became financially involved, which has resulted in the filing of numerous liens against the fund in the State's hands still owing the general contractor.

There appears to be practically no dispute as to facts in the case, but the questions raised for decision are questions of law as to validity and rights of the various lienors in the fund for distribution.

It appears the Lackawanna Steel and Construction Company, under a contract with the Longacre Company, furnished certain steel, which went into the construction of the armory, and on the 15th day of March, 1933, filed with the proper State departments a notice of lien for the sum of $1,588, still due and unpaid. This was the first lien filed. On or about the 29th day of March, 1933, the Longacre Company, as principal with the Firemen's Fund Indemnity Company, as surety, pursuant to section 21 of the Lien Law, gave and filed an undertaking in the penal sum of $1,900, conditioned for the payment of any judgment which might be recovered in an action to enforce said lien, and an order of the court was made discharging said lien. The amount owing the plaintiff has not been paid. The indemnity company has been made a party defendant in this action. The plaintiff asks the amount due and owing it be established and that it have judgment for the amount so established against the indemnity company.

Subsequent to the filing of the plaintiff's lien and to its discharge by the giving of the undertaking stated, other liens were filed against said fund and such lienors are also made parties defendant in this action.

In this connection it should be stated that on the 18th day of May, 1933, the plaintiff began this action and filed with the State Comptroller its summons and complaint and *lis pendens*. At that time none of the other notices of lien on the fund had been filed, but shortly after, numerous liens were filed by various subcontractors, materialmen and laborers. This necessitated amendment of the proceedings by the bringing in as defendants such subsequent lienors, and on or about the 19th day of September, 1933, on application to the Supreme Court, an order was made permitting the plaintiff to so amend *nunc pro tunc*. An amended summons and complaint and *lis pendens* were accordingly filed with the Comptroller on the 21st day of May, 1933. Such defendants have appeared and answered and given proof as to their respective claims.

Such answers raised numerous questions of law, touching the

merits and validity of certain liens which the referee will discuss in their order.

### As to the Claim of the Firemen's Indemnity Company to Participate in the Distribution of the Fund.

The plaintiff in this action filed notices of lien in the proper offices on the fifteenth day of March, for the sum of $1,588.

The Longacre Company, the general contractor, gave an undertaking pursuant to the provisions of section 21 of the Lien Law to discharge this lien with itself as principal and the indemnity company as surety. The bond was in the usual form, conditioned to pay any judgment established in a mechanic's lien foreclosure action as the amount due and owing. An order of the Supreme Court was duly entered, discharging said lien and filed by the plaintiff. The plaintiff's lien was the first of all filed. However, other subcontractors and laborers filed liens against said fund subsequent to that filed by the plaintiff.

This action was begun by the plaintiff to establish the amount due on the lien so filed by it, and the indemnity company and other lienors are made parties defendant. The indemnity company has appeared and answered and claims the right to participate with other lienors in the distribution of the fund in the hands of the State owing by it to the general contractor. The subsequent lienors challenge the right of the indemnity company to such sharing, and contend that by the giving of said bond, the plaintiff's lien was discharged and the fund can only be distributed to other valid lienors. This raises one of the important questions to be decided in this case.

The argument of counsel for the indemnity company is that it is entitled to be subrogated to the rights of the plaintiff on the payment of the amount found due and owing to it.

The counsel for the indemnity company contend the case of *Levering & Garrigues* v. *Burke, Ltd.*, fully sustain its right to such subrogation. The case cited was decided by Mr. Justice Dike. His opinion is not reported in any official reports. It is, however, to be found in " Cases and Points in the Court of Appeals," volume 3283, in the Buffalo Law Library. An appeal from the judgment was taken to the Appellate Division of the Supreme Court, and there affirmed without opinion. (See 214 App. Div. 730.) A further appeal was taken to the Court of Appeals and the judgment again affirmed without opinion in 242 New York, 565.

The referee has carefully studied the printed record and is of the opinion the case cited is clearly distinguishable from the case now under consideration. We shall speak of it as the *Levering* case.

In that case, while the action was in form one to foreclose a mechanic's lien, it was really one to determine the equities of the parties to the action, growing out of the giving of a bond to discharge a mechanic's lien filed. It appears from the record such a bond was given, and an order made discharging the lien. It was stipulated on the trial that the owner of the property improved still held in his hand some $3,178.26, being the amount still owing to general contractor. The question disposed of was whether the indemnity company on the payment of the amount of the lien discharged was entitled to be paid the amount established out of the moneys so owing by the owner. The trial court held the indemnity company was so entitled.

The reading of Judge DIKE's opinion, however, shows clearly he disposed of the case on the general rules of law and equity governing the relations of principal and surety.

It is to be noted that in his opinion the learned judge said: " By the giving of the bond and through its proper docketing, the land was relieved from the liability."

It should be further noted that in the *Levering* case the lien filed and discharged was a lien filed for a private improvement as distinguished from one for a public improvement.

By section 3 of the Lien Law the lien filed attaches to the land itself. In the present case, however, the lien filed and discharged was for a public improvement where the lien attaches to the fund instead of to the land. (*Clapper* v. *Strong*, 90 App. Div. 536.)

If then a lien on *land* is discharged by the giving of the proper undertaking for its payment as held in the *Levering* case it follows that the *fund* in a public improvement must be likewise discharged by a proper undertaking in a public improvement case.

Instead, therefore, of the *Levering* case being an authority supporting the indemnity company's contention, we think it one holding to the contrary.

In the *Levering* case the money held and unpaid by the owner and due the contractor was not impressed with a lien in favor of the bonding company by virtue of any statutory provision of the Lien Law. The right of subrogation given in the *Levering* case was based entirely owing to relation between the owner, the contractor and the surety of an equitable character which do not exist in the present case between the State or the subsequent lienors, and where, however, the lien on the fund has been discharged by the giving of the required undertaking we hold it ceases to exist and only those holding valid liens are entitled to share in the distribution of the fund. To hold otherwise would be to defeat the plain purpose of the statute, which is to release the fund.

The referee is of the opinion the decisions of the courts of the State fully sustain his views. In the case of *Arrow Iron Works* v. *Greene* (260 N. Y. 330) a deposit was made and the lien ordered discharged. The court held the lienor must look solely to the deposit for the payment of his lien, saying (at p. 338): " We think that the plaintiff may have no other relief than payment to it of the sum deposited; that neither ' earned ' nor ' unearned ' items, due upon the contract, are subject to any claim by the plaintiff."

In the case of *Coleman & Krauss* v. *City of New York* (162 App. Div. 134) the court said: " The very purpose for which the bond was given by the surety company was to assume the liability which otherwise would have attached to the funds belonging to the contractor and still in the hands of the city, but when that bond became effective the city was discharged from any further liability as between the parties." For other cases bearing on the question, see *Berger Manufacturing Co.* v. *State of New York* (206 N. Y. 24); *Kerrigan* v. *Fielding* (47 App. Div. 246); *New Jersey Terra Cotta Company* v. *State of New York* (112 Misc. 510); *Harley* v. *Plant* (210 N. Y. 405).

The referee finds the Lackawanna Steel Construction Company, the plaintiff in this action, had, before its discharge, a valid lien on the funds subject to distribution for $1,388, and that the indemnity company is liable for said amount, with interest thereon; that the plaintiff is entitled to judgment for said amount against the Longacre Engineering and Construction Company, as principal, and said indemnity company, as surety, together with costs of this action. The decree to be entered should so provide.

### In the Matter of the Claim of Pittsburg & Freeport Company, Inc.

This company has filed a lien for $1,771.22. It is principally for material furnished to the Longacre Engineering and Construction Company, and a considerable portion for coal used in heating the armory in process of erection and for operating some of its machinery. It is contended that coal so furnished is not a lienable charge.

The referee, however, is of the opinion to the contrary. The statute is to be liberally construed and we think coal so used comes fairly within the designation of " *material* " furnished a contractor.

Among other items included in the claim is an item of ninety dollars charged for the rental of a cement mixer and one of seventy-five dollars for the rental of a hoisting elevator. These two items must be eliminated from the claimant's bill as not lienable items under the authority of *Troy Public Works Co.* v. *City of Yonkers* (207 N. Y. 81).

Also included in the claimant's bid is the sum of $437.48 arising under the following circumstances: French & Lawson were sub-contractors under the Longacre Engineering and Construction Company for doing certain work on the armory. The Pittsburg & Freeport Company furnished French & Lawson certain material used by French & Lawson in the fulfillment of their contract with the Longacre Company. French & Lawson were slow in the payment of the supplies so furnished. The matter was laid before the superintendent of the Longacre Company, who stated to the representative of the Pittsburg & Freeport Company that if that company would get from French & Lawson an assignment of its claim, it would retain from moneys owing and pay it to the Pittsburg & Freeport Company. Accordingly, the Pittsburg & Freeport Company on April 20, 1933, obtained from French & Lawson a written order directing the Longacre Company to pay the Pittsburg & Freeport Company the sum of $437.48, which order was delivered by it to the Longacre Company. This amount is included in the lien filed by the Pittsburg & Freeport Company. Other claimants to the fund in the State's hands object to the allowance of this amount.

This $437.48 represents an indebtedness owing by French & Lawson to the Pittsburg & Freeport Company, and not one owing by the Longacre Company to that corporation.

French & Lawson had a right to a lien for labor and material supplied by them to the general contractor, the Longacre Company, but the amount owing by French & Lawson to the Pittsburg & Freeport Company is not a lien that can be asserted against the fund owing the general contractor.

The order of French & Lawson on the Longacre Company to pay the Pittsburg & Freeport Company was tantamount to an assignment of $437.48 of the indebtedness owing by the Longacre Company to French & Lawson, but this, however, we do not understand in any way changed or modified the lien rights of the parties. It certainly could not change the rights of materialmen furnishing supplies directly to the Longacre Company, and that would be the effect if the court were to allow a lien on the general fund for supplies furnished a subcontractor of the general contractor.

It is claimed that the general contractor orally agreed to pay the Pittsburg & Freeport Company the amount of the French & Lawson bill on their procuring the assignment given. Such a promise, if legal and binding on the Longacre Company, could not bind the materialmen furnishing supplies to the Longacre Company, or deprive or lessen their rights by way of liens on the general fund in the hands of the State. In any event, it amounted only to

a promise binding on the Longacre Company, and it is to be doubted whether as such promise it rendered the Longacre Company personally liable to the Pittsburg Company for the indebtedness of French & Lawson to it. Of course, the Longacre Company was bound to reserve from any moneys due French & Lawson the $437.48 assigned. If nothing was owing French & Lawson by the Longacre Company then the Pittsburg & Freeport Company could not hold the Longacre Company for such indebtedness. All that possibly could be claimed is a verbal promise to become liable for the indebtedness of a third party. To make such a promise binding, there should have been some promise in writing. No such written promise is claimed to have been given.

We, therefore, reach the conclusion that the amount of $437.48 must be eliminated and deducted from the amount of the alleged lien of the Pittsburg & Freeport Company.

As to the liens of the Crittal Manufacturing Company, the Jamestown Metal Desk Company, Chall Lumber Company, Pittsburg and Freeport Cold Springs Granite Company, Art Metal Construction Company and the George D. Cornell Company and others, certain lienors contend these liens lapsed because the parties named failed to file orders of extension of their respective liens as required by section 18 of the Lien Law. This section provides that liens in cases of public improvement " shall not continue for a longer period than three months from the time of filing notice of such lien, unless an action is commenced to foreclose such lien within that time, and a notice of pendency of such action is filed with the comptroller of the state    *    *    *    or unless an order be made by a court of record continuing such lien, and a new docket be made stating such fact."

The facts are that this action to foreclose was begun prior to the filing of the liens of the parties named, but owing to the fact their respective liens at the time the action was begun were not filed, said lienors were not made parties defendants to the action.

However, the complaint and proceedings were amended bringing in said lienors as parties defendant, and an amended *lis pendens* was filed on September 21, 1933. Before the proceedings were so amended, the three months specified in section 18 had expired, and no order for the extension of said liens had been made.

The question presented is whether such omission caused the liens to lapse.

The order of the court permitting the amendment of proceedings bringing in these lienors as parties defendant directed " the same hereby is amended *nunc pro tunc* so as to include the above named parties as additional defendants herein," and directed the State

department " to make the necessary changes and additions to their docket." This was done. The order recites it was made on the consent of all parties. No appeal from such order was taken.

In the case of *Arrow Iron Works, Inc.,* v. *Greene* (139 Misc. 265; affd., 235 App. Div. 712; modfd. on other points, 260 N. Y. 330) the trial court held that " as to the subcontractors who filed notice of lien prior to June 18, 1929 [the date of filing the *lis pendens*], but who failed to obtain orders extending their liens, I hold that their liens have lapsed * * *. Liens filed after June 17, 1929, required no order of extension due to the commencement of the present action."

On the appeals taken, the decision of the trial court was affirmed without opinion. However, the case appears to be an authority supporting the contention that orders of extension are unnecessary in the present case.

It is true that the statute says that liens filed shall lapse after three months " unless an action is commenced to foreclose such lien within that time " or an order made extending the lien, but " if a lienor be made a party defendant in an action to enforce another lien, and the plaintiff or such defendant has filed a notice of the pendency of the action within the time prescribed in this section, the lien of such defendant is thereby continued."

The section closes by declaring that " this section shall be a remedial statute and is to be construed liberally to secure the beneficial interests and purposes thereof."

We are of the opinion it can be fairly said that the plaintiff's action to foreclose was one brought and a *lis pendens* filed within the time prescribed, and the pendency of the plaintiff's action operated to continue liens subsequently filed without an order to that effect. Such a holding carries out " the beneficial interests and purposes " of the statute, and we hold that the objections raised to the liens in question must be overruled. It carried out the further provision of section 23 of the Lien Law declaring " this article shall be construed liberally to secure the beneficial interests and purposes thereof. A substantial compliance with its several provisions shall be sufficient for the validity of a lien and to give jurisdiction to the courts to enforce the same."

It is said in the case of *Standard Sand & G. Co.* v. *City of New York* (172 App. Div. 80) that " in construing a statute, and especially a remedial one like the Lien Law, we should not always confine ourselves to the strict legal definition of the terms used, but are at liberty to seek out the intention of the Legislature and to give effect to that intention, if by any reasonable construction the language will permit us to do so."

We, therefore, hold that the liens questioned by the objection raised are valid, and did not lapse by failure to obtain orders of extension.

## As to the Claim of the Toledo Plate and Window Glass Company.

This company has filed a notice of lien for $117.40 for window glass sold to the Longacre Company, and installed in the State armory.

Objection to the validity of the claim is raised on the ground that the Toledo Plate and Window Glass Company is a foreign corporation and never obtained authority to do business in the State of New York.

The answer of this defendant alleges it is a corporation organized under the laws of the State of Ohio, and that pursuant to a contract with the Longacre Company, it sold and delivered to it certain glass and " performed certain glazing work, which materials and work were furnished for and used in connection with the above said public improvement contract," and that a balance of $117.40 remained unpaid.

The affidavit filed on behalf of the glass company, in support of its claim pursuant to stipulation, sets forth a charge of thirty-three dollars as extras and attaches a copy of a letter from the Longacre Company accepting an offer for supplying " and setting " glass for two additional windows at the price stated, in which letter it is further stated: " The amount of this order is to be added to your contract price and is subject to the same terms and provisions as your original contract."

We think the fair inference to be drawn is that the lienor's claim is not only for the glass supplied, but for " setting " the glass in the building, which involves work and labor to be performed within the State of New York.

The question, therefore, arises whether this is such a violation of the State statute (General Corp. Law, § 210) providing: "A foreign corporation, other than a moneyed corporation, shall not do business in this state without having first obtained from the secretary of state a certificate of authority."

In the case of *Italian M. & M. Co., Inc.*, v. *City of Niagara Falls* (131 Misc. 281) this referee held that when a foreign corporation had furnished material and performed work on a school building in this State, without having obtained the certificate mentioned, it could not obtain or enforce a lien against the fund for distribution.

In the case referred to it appeared that the claimant maintained

an office within the State for doing business, and the contract was made within the State. In the instant case the Toledo Plate and Window Glass Company maintained no office within the State, and it does not specifically appear whether the contract was made here or in Ohio, and it is contended on behalf of the claimant that such facts take the instant case without the *Niagara Falls* case, and the claimant is entitled to its alleged lien.

In the *Niagara Falls* case we said that the statute did not prevent a foreign corporation from obtaining a lien, provided it complied with the law entitling it to a lien. We do not deem the fact that it maintained no office within the State for the transaction of business controlling. The prohibition is against doing " business in this State " without procuring the necessary certificate. A corporation may do business within the State without maintaining an office here. Neither does the validity of a contract depend on its being made within the State. If this claimant had simply sold the glass and delivered it to the armory to be used there, it would not have been doing business within the State. This, however, does not dispose of the question of law presented in this case.

The purposes of the statute were elaborately discussed by the Court of Appeals in the cases of *Penn Collieries Co.* v. *McKeever* (183 N. Y. 98) and *International Fuel & Iron Corp.* v. *Donner Steel Co.* (242 id. 224), and it was there held that to constitute doing business within the State the foreign corporation must do more than make a single contract, engage in an isolated piece of business, or an occasional undertaking. It must maintain and carry on business with some continuity of act and purpose. To defeat the lien in question it was incumbent on those objecting to the lien that the claimant violated the statute in the manner stated.

There was given no evidence that the glass company was doing a general or continuous business here. For all that appears, the sale and setting of the glass in the Jamestown armory was the sole and only transaction had in this State.

This, we think, distinguishes the instant case from that of *Italian Mosaic & Marble Co., Inc.,* v. *City of Niagara Falls* (131 Misc. 281).

We, therefore, reach the conclusion that the evidence given fails to establish the fact that the claimant was doing business within the State in violation of the statute, and its claim, is, therefore, allowed.

### As to Certain Liens Filed for Labor.

The following claimants have filed liens for labor done on the armory in question for the amounts set opposite their respective names, to wit:

| | | |
|---|---:|---:|
| Arthur Anderson, for............................... | $347 | 00 |
| Mauritz Anderson, for.............................. | 85 | 00 |
| Rogers Anderson, for............................... | 65 | 00 |
| Erie Anderson, for................................. | 18 | 40 |
| Elmer Edlund, for.................................. | 41 | 00 |
| Claus Ross and Bernard N. Johnson, for.............. | 95 | 00 |
| Alfred P. Westerling, for........................... | 119 | 00 |
| Richard Galbraith, for.............................. | 97 | 48 |
| Arrid J. Gustafson, for............................. | 41 | 06 |
| G. Leonard Gustafson, for.......................... | 58 | 00 |
| R. Harold Gustafson, for........................... | 58 | 00 |

In stating the above amount, interest on said amounts has not been computed. All of the above-named parties were laborers or mechanics working for a daily wage, and as such are entitled to the preference in payment given by the statute.

It is conceded, however, that they were employed by and working for Charles B. French. French was a subcontractor for the Longacre Engineering and Construction Company. The Longacre Company owes these lienors nothing, but the indebtedness represented by their liens is the indebtedness of Charles B. French. Their liens, therefore, only attach to such amount as is owing French by the Longacre Company, and do not attach to the general fund owing by the State to the Longacre Company.

The amount owing by the Longacre Company to French is the sum of $790. This amount is insufficient to pay the above-named mechanics or laborers in full. They, however, are entitled to be paid from the moneys owing French *pro rata* on the amount of their claims so far as said sum will discharge their indebtedness, and it is so ordered.

This holding also applies to four claimants who were employees of George J. Summers, to wit, to Charles W. Duerbeck, Alexander J. Pettit, Frank H. Thompson and Frederick P. Scheler, to whom Summers owes wages.

A formal decision in conformity with the views above expressed may be drawn. All lienors whose liens have been established against the general fund in the hands of the State will share *pro rata* in the distribution.

As above indicated, laborers establishing claims against sub-contractors are entitled to priority of liens against other lienors on amounts found owing to sub-contractors, but will share *pro rata* among themselves.

A trial fee is awarded to attorneys appearing and establishing liens against the general fund to be paid out of such fund.

The plaintiff is to recover a full bill of costs with such extra allowance as the Special Term of this court may award.

So ordered.

Supplementary opinion, March 31, 1934.

In the original opinion rendered by this referee in disposing of this case, in discussing the lien of the Pittsburg & Freeport Company, Inc., the referee held that coal furnished by said company to the general contractor for heating the armory in process of construction was a lienable item.

However, the referee has been shown an opinion of the Appellate Division, Fourth Department rendered on the 14th day of March, 1934, in the case of *Wilson* v. *Moon* (240 App. Div. 440), in which that court has held that coal and coke so furnished are not lienable items, which is at variance with the view heretofore expressed by this referee.

As no formal decision in this case has been signed, we deem it our duty to modify our decision in conformity with the holding of the Appellate Division, which we now do. Serious difficulties, however, are presented in determining just what reduction should be made in the amount of the claim of the Pittsburg & Freeport Company, Inc.

The evidence is that that company furnished the general contractor much other material than coal which went into the construction of the armory at Jamestown. The contractor was charged for such items in a general account, including coal and coke sold and delivered. The total charges for these things amounted to $9,541.22. However, the contractor paid the company from time to time various amounts, so that at the time the notice of lien was filed there was only owing, according to said account, a balance of $1,761.22. Therefore, the contractor must have paid to apply on said account $7,780. The total invoices for coal and coke furnished foot up to $1,055.46. Consequently that taken from $9,541.22 leaves $8,485.78 as the cost of material other than coal and coke.

The question presented is how the payment made by the general contractor shall be credited, whether on the cost of the coal and coke, or on the cost of the other material furnished, or whether such payments should be apportioned between the two classes of supplies. There is no evidence that the contractor at the time of making payments gave any direction as to how the amounts should be credited. Nor did the lienor apply such payments to any specific class, but credited the contractor generally with the payment of so much money. It remains, therefore, for the court to say how such payments should be applied. We are of the

opinion that justice and equity require such payments to be applied proportionately to the different classes of items.

We know of no other method of arriving at a just result.

Applying this method to the facts, we have $8,485.78 as representing lienable items, and $1,055.46 as non-lienable. Payments amounting to $7,780 have been made to the Pittsburg & Freeport Company, Inc. In other words, 81.54 per cent of the account was paid and received. Apportioning, therefore, this 81.54 per cent to the purchase price of the coke and coal, it pays $880.62 of the bill for coal and coke, and leaves $195.24 unpaid. This last amount, we think, should be deducted from the amount claimed by the Pittsburg & Freeport Company, Inc., in addition to the items disallowed and specified in the original opinion of the referee.

In drawing the formal decision for the referee to sign, such deduction will be made.

So ordered.