continually from June 15, 1916, to September 4, 1916, that the plaintiff should provide a competent band, and that the hotel should be run as a strictly first-class summer resort.

The papers convincingly show that at the time the order to show cause was granted, on which this matter came on to be heard, the plaintiff was out of possession of the premises and that they were then in possession of the defendants. There is a conflict in the papers as to whether the plaintiff voluntarily abandoned the hotel, or whether he or his representatives were put out of possession by the defendants. The defendants claim that the plaintiff failed to keep the hotel open, did not pay the help or the band, did not pay Webber for supplies furnished, and violated provisions of his lease which justified the owner in declaring it forfeited; and it appears that the owner notified Webber that there had been default by the plaintiff.

While there is some conflict in the papers, it seems to be established that the plaintiff did not pay the help or the band, and did not pay Webber the amount due him. Webber claims that he took possession of the hotel in order to protect himself from liability on the bond, acting under the assignment executed by the plaintiff to his nominee. Under these conditions, no mandatory injunction should be granted pending the trial of the action. The plaintiff, being out of possession, cannot properly be put back in such a summary action, where the defendants are in possession under a claim of right. Black v. Jackson, 177 U. S. 349, 361, 20 Sup. Ct. 648, 44 L. Ed. 801; Troy, etc., R. R. Co. v. Boston, etc., R. R. Co., 86 N. Y. 107, 122; Bachman v. Harrington, 184 N. Y. 458, 77 N. E. 657; Oppenheim v. Thanasoulis, 123 App. Div. 494, 108 N. Y. Supp. 505.

[5] The fact that the plaintiff has obtained possession, either partial or complete, of the hotel under the mandatory provisions of the order to show cause, in no way affects the determination of this motion. This decision must be based upon the situation as it existed when the order to show cause was granted. At that time the plaintiff was out of possession. If he has acquired possession under the provisions of the order to show cause, which was granted ex parte, that of course can give him no right, so far at least as the decision of this motion is concerned, that he did not have before the order was obtained.

It follows that the motion must be denied, and the injunction obtained in the order to show cause vacated.

---

(173 App. Div. 528)

GENERAL FIREPROOFING CO. v. KEEPSDRY CONST. CO. et al.

(Supreme Court, Appellate Division, Third Department. June 30, 1916.)

1. STATES ⬥⟹105—ASSIGNMENT OF CONTRACT—FILING.

Under Lien Law (Consol. Laws, c. 33) § 16, providing that no assignment of a contract for labor or materials for public improvements shall be valid until filed with the head of the department or bureau having charge of such construction and with the financial officers of the municipal corporation charged with custody and disbursement of the corporate

funds applicable to the contract, and Public Buildings Law (Consol. Laws c 44) § .8, as amended by Laws 1914, c. 111, providing that the state architect shall prepare drawings and specifications, and supervise the construction of all new buildings at the expense of the state and for the alteration or improvements thereof, an assignment by the original contractor of all its rights to compensation under a contract with the state of New York to do certain work and furnish certain material in the assembly chamber at the capitol must, in order to be valid, be filed, not only in the office of comptroller, but also with the department of architecture.

[Ed. Note.—For other cases, see States, Dec. Dig. ⚖═105; Assignments, Cent. Dig. § 26.]

2. STATES ⚖═105—ASSIGNMENT OF CONTRACT—FILING.

Under Lien Law, § 16, and Public Buildings Law, § 8, as amended by Laws 1914, c. 111, where the president of the plaintiff merely took an assignment of a contract to the assistant secretary of the department of architecture for assistance in procuring the signature of the trustees of public buildings, made no attempt or offer to file the paper in the department of architecture, and had no purpose to do so before delivery of the assignment, this did not constitute a filing of the assignment.

[Ed. Note.—For other cases, see States, Dec. Dig. ⚖═105; Assignments, Cent. Dig. § 26.]

3. APPEAL AND ERROR ⚖═839(1)—REVIEW—SCOPE.

Where the trial court found a mechanic's lien to be valid, and appeal was not taken from that part of the judgment, the question of the sufficiency and validity of the lien is not before the court on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3279, 3282, 3293; Dec. Dig. ⚖═839(1).]

Appeal from Trial Term, Albany County.

Action by the General Fireproofing Company against the Keepsdry Construction Company and others. From a judgment (93 Misc. Rep. 635, 158 N. Y. Supp. 567) directing, among other things, that the People of the State of New York pay, out of the fund directed to be distributed to certain parties to this action, the sum of $5,186.49 to the defendant New York State National Bank, Albany, plaintiff appeals. Judgment, so far as appealed from, reversed and modified as per opinion.

Argued before KELLOGG, P. J., and LYON, HOWARD, WOODWARD, and COCHRANE, JJ.

Eidlitz & Hulse, of New York City (Frederick Hulse, of New York City, of counsel), for appellant.

Tracey, Cooper & Townsend, of Albany (James F. Tracey, of Albany, of counsel), for respondent New York State Nat. Bank.

Egburt E. Woodbury, Atty. Gen., for the People.

HOWARD, J. On November 13, 1914, the defendant the Keepsdry Construction Company entered into a contract with the state of New York to do certain work and furnish certain material in the assembly chamber at the capitol for the sum of $13,800. The plaintiff, as a subcontractor, performed much of the work and furnished much of the material under this contract. The contract has been completed, and there remains due from the state, and unpaid, $7,275. There is due and owing from the original contractor to the plaintiff a sum in

excess of the amount due from the state, and it has filed a lien to secure the amount due. The original contractor borrowed money from the defendant the New York State National Bank, Albany, and on December 31, 1914, assigned to the bank, as security for the loan, all its right to compensation under the contract with the state. Other liens besides the plaintiff's have been filed, but they are not in issue here. The assignment by the original contractor to the bank was made prior to the filing of any of the notices of lien, and was filed in the office of the state comptroller before either of the notices of lien.

[1] But the plaintiff contends that the assignment is not valid, because it was not filed in the department of architecture. Therefore we must determine whether the law required it to be filed there, and, if so, whether it was, in fact, filed there. There seems to us not to be much doubt that the statute required the assignment to be filed in the department of architecture. Section 16 of the Lien Law provides:

"No assignment of a contract for the performance of labor or the furnishing of materials for a public improvement, or of the money or any part thereof due or to become due therefor, * * * shall be valid until such assignment or order, or a copy thereof, be filed with the head of the department or bureau having charge of such construction, and with the financial officer of the municipal corporation or other officer or person charged with the custody and disbursement of the corporate funds applicable to the contract for such public improvement, and such assignment or order shall have effect and be enforceable from the time of such filing."

Section 8 of the Public Buildings Law, as amended by chapter 111 of the Laws of 1914, provides that:

"The state architect shall prepare * * * drawings and specifications * * * and supervise the construction of all new buildings erected at the expense of the state, except as provided in this article, shall also prepare the drawings and specifications for all additions to existing buildings, and for the alteration or improvement thereof, except when such work is done by an institution or inmate labor or both upon special fund estimates, and shall see that the materials furnished and the work performed in constructing, altering or improving any such building are in accordance with such drawings and specifications, and that the interests of the state are fully protected."

Thus we find that section 16 of the Lien Law requires the assignment or a copy thereof to "be filed with the head of the department or bureau having charge of such construction," and that section 6 of the Public Buildings Law as amended by chapter 111, Laws 1914, vests the state architect with complete supervision of the work. No other statute attempts to clothe any other official or department with any supervision or charge whatever over work of this character, and hence we conclude that section 16 of the Lien Law required the assignment to be filed, not only in the office of the comptroller, but also with the department of architecture. Therefore, unless it was so filed, it was not valid.

[2] There is no contention that the assignment was actually left in the department of architecture and remained there on file. The facts are as follows: Section 86 of the General Municipal Law (Consol. Laws, c. 24) prohibits a contractor from assigning or subletting a contract with the state without first obtaining the consent

of the department awarding the same. Acting apparently in recognition of this provision of the statute, Mr. Plass, the president of the Keepsdry Construction Company, the original contractor, took the duplicate assignment of the contract to the assistant secretary of the department of architecture and the following took place.

"Q. Mr. Hichman, you reside in Albany, N. Y.? A. Yes, sir. Q. What office do you hold? A. Assistant secretary of the department of architecture. Q. Assistant secretary of the department of architecture, over which the state architect presides? A. Yes, sir. Q. Are you acquainted with Mr. Plass, who is president of the Keepsdry Construction Company? A. Yes, sir. Q. Do you recollect on one occasion when he came to your office with the duplicate assignments of contracts between his company and the trustees of public buildings for execution? A. Yes. Q. (presenting same). Will you look at these two papers, and say what your recollection is as to their being the assignments? A. Yes, sir. Q. Are those signatures appended to those two contracts original signatures of the officers who signed? A. Yes, sir. Q. Just read the names of the officers, will you, please? A. Martin H. Glynn, Thaddeus C. Sweet, attested by Frank A. Tierney, and approved by James A. Parsons, Attorney General. Q. Both duplicates bear the original signatures of those officers? A. With the exception of the Attorney General, whose first deputy signed that. Q. Where was it that Mr. Plass saw you—in what office? A. In my office, I think. Q. He waited on you? A. Yes. Q. These assignments of contracts were signed before Mr. Plass left your office? A. No; Mr. Plass brought those to my office, and I had some other papers, resolutions of trustees, and I took them with me first to the Attorney General to be approved as to form, and then I think the Speaker signed next. I saw him sign it, and then the Governor, and Mr. Tierney attested it. Q. Who in your office has the duty of dealing with these liens that are filed in your office? Under whose charge does it come? Does it come under your charge? A. No; they are generally filed with the secretary, the liens. Q. Who is the secretary? A. Mr. Roberts. Q. What is his full name? A. Francis A. Q. What did you do with these two papers, the last thing you did with them? A. After having them signed? Q. Yes. A. I gave them back to Mr. Plass when he called at the office later in the day. Q. Mr. Plass is not a lawyer? A. I don't know; I don't think so. Q. He doesn't act like one? A. No; he don't look like one. Q. Mr. Hichman, this paper was not at that time stamped 'Filed' in your office, was it? A. Those papers were not filed. Q. That was not stamped 'Filed' in your office? A. Oh, no. Q. But this transaction took place in your office? A. Oh, yes. Q. Did you tell Mr. Plass what he must do with the paper when you handed it back to him? A. I don't recall, Mr. Tracey; I think I told him to go to the comptroller.

"Mr. Robison: Objected to, as incompetent, immaterial, and irrelevant, what he told Mr. Plass.

"The Court: He says he don't recall.

"Q. You started to say you thought you told Mr. Plass?

"Mr. Robison (interrupting). Objected to. Overruled.

"A. That it was to be filed in the comptroller's office, and he said he had advised to that effect. Q. That is about all, is it? A. That is all I know about the transaction, yes."

We have quoted the complete record on this subject, for it is this transaction, as the defendant bank contends, which constituted the filing of the assignment in the office of the department of architecture. It seems to us that this cannot be held to have constituted a filing of the assignment. The president of the Keepsdry Construction Company merely took the paper to the assistant secretary of the department of architecture to have that official assist him in procuring the signature of the trustees of public buildings. Mr. Plass made no attempt to file the paper in the department of architecture, made no

offer to do so, had no purpose to do so. Indeed, the paper was not, at that time, in shape to be filed. It had not been delivered to the bank, and did not become an assignment until after delivery. It was not for the Keepsdry Construction Company to file the assignment. It had no interest in so doing. That was for the bank to do. But the bank never made any attempt to file the assignment with the department of architecture, and makes no pretense that it has, although it was careful to file it with the state comptroller. The truth is, very likely, that the bank was not advised that it was necessary to file the assignment with the department of architecture, and therefore made no effort whatever to do so. At all events we cannot hold that this paper was ever filed with the department of architecture. If we were to so hold, then it would follow that a similar transaction at the comptroller's office would constitute a filing of the paper in that office, with the result that neither office would show any record of filing, or contain the assignment or any duplicate thereof. This would make a farce of a statute calculated to protect lienors against secret assignments of contracts. The assignment was not filed in the office of the department of architecture, and is therefore, as between the plaintiff and the bank, void and worthless.

[3] The respondent in its brief attacks the validity of the plaintiff's lien. The trial court found the lien to be valid, and the bank has not appealed from that part of the judgment, or any part of the judgment; therefore the question of the sufficiency and validity of the lien is not before us for consideration. Wilson v. Mechanical Orguinette Co., 170 N. Y. 542, 63 N. E. 550.

The judgment below, so far as appealed from, should be reversed, and the judgment should be so modified as to direct payment to the plaintiff of the balance of the moneys therein referred to remaining in the hands of the state comptroller, after payment only of the amounts therein adjudged to be paid to the defendants Albany Builders' Supply Company and Hobbs, with costs against the bank. The court disapproves of the finding of fact made by the trial court to the effect that the assignment in question was filed with the department of architecture, and finds that it was not so filed. All concur.