GIANT PORTLAND CEMENT COMPANY, Respondent, *v.* BARBER ASPHALT PAVING COMPANY and Others, Appellants.

Fourth Department, May 14, 1919.

Liens — mechanics' liens for labor and material furnished under contract for public improvement — assignment by contractor — priority of claim to money assigned between the assignee and parties filing liens as materialmen and laborers — assignee not entitled to benefit of rule of priority as to labor liens — failure of laborers to file liens until after filing of assignment — when material does not become part of improvement within meaning of statute — foreclosure of mechanic's lien — failure by lienor to file lis pendens.

Where a State road contractor makes an assignment to a bank of moneys due and to become due under the contract, and notices of lien are filed by materialmen and laborers, some of the former prior to the filing of the assignment and all of the latter afterward, the assignment to the bank is subordinate to the liens for which notices were filed before the filing of the assignment and superior to those filed afterward.

Since such an assignee does not stand in the shoes of the labor lienors, it cannot avail itself of the rule of priority of labor liens.

Liens for material existing before the assignment became effective cannot be affected as between the bank and such prior lienors by the subsequent filing of liens for labor.

Since there is a surplus exceeding the amount of the labor liens, which was effectively assigned because of the neglect of the labor lienors to file their liens until after the filing of the assignment, the materialmen should not be prejudiced through the neglect of the laborers to file their liens in time.

A lien may not be had upon the funds earned under a contract with the State or municipality for a public improvement for the difference between the contract purchase price and what was realized by the alleged lienor for material shipped but never delivered, since said material did not actually or constructively enter into or become a part of the improvement, within the meaning of the statute.

In an action to foreclose mechanics' liens for labor and material for State work, *held,* that the liens of such lienors as failed to file *lis pendens* expired after the expiration of the time for which a final order of extension continued the same.

REARGUMENT of an appeal by the defendants, Barber Asphalt Paving Company and others, from parts of a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Monroe on the 22d day of January, 1917, upon the decision of the court after a trial at the Monroe Special Term.

*William J. Doetsch* [*Edwin L. Dolson* of counsel], for the appellant Barber Asphalt Paving Company.

*James R. Creary* for the appellants Bennet F. Cowles and others.

*Warren, Shuster & Case* [*Clarence E. Shuster* of counsel], for the appellant The National Bank of Commerce of Rochester.

*Lynn Brothers* [*William F. Lynn* of counsel], for the respondent.

KRUSE, P. J.:

The action is for foreclosure of mechanics' liens for labor and material for State highway work. We handed down a decision at the May, 1918, term (184 App. Div. 929), holding that the provisions of the Lien Law for filing assignments of contracts did not apply to contracts for State highway work,

following our decision in *Armstrong* v. *State Bank of Mayville* (177 App. Div. 265). But the Court of Appeals, in affirming the decision of the Third Department in *General Fireproofing Co.* v. *Keepsdry Const. Co.* (173 App. Div. 528; 225 N. Y. 180), overruled our decision in *Armstrong* v. *State Bank of Mayville* upon that point, which makes it necessary to reconsider our decision in this case. A reargument has been ordered. (187 App. Div. 971.)

Horace N. Cowles had a State contract for highway work in the county of Niagara. He defaulted and the State completed the same. After deducting the expense of completion, there remained due to the contractor from the State the sum of $7,646.46. The contractor made an assignment to the National Bank of Commerce of Rochester of moneys due and to become due upon the contract, and notices of lien were also filed by materialmen and laborers. The controversy here is among these claimants over the moneys remaining unpaid.

The assignment to the bank is dated May 1, 1914. It secures payment of a then existing indebtedness upon which $6,950 remains unpaid and is a continuing security to the bank for any and all liability of the contractor to the bank. The assignment was filed in the office of the State Superintendent of Highways on October 31, 1914, and in the office of the State Comptroller on November 25, 1914. Some of the liens for material were filed prior to the filing of the assignment but all labor liens were filed afterward.

The Special Term held that the assignment to the bank was subordinate to the liens for which notices were filed before the filing of the assignment, and superior to those filed afterward. This was correct. (*General Fireproofing Co.* v. *Keepsdry Const. Co., supra.*)

It further held that the labor liens being superior to the material liens, under the express terms of the statute, the amount of the labor liens should be deducted from the amount covered by the material liens, and only the balance be applied upon the material liens; that the labor lienors were not entitled to the amount so deducted for their liens because they were subordinate to the assignment, it having been filed prior to the labor liens, and, therefore, the bank was entitled to the amount so deducted under the assignment.

The judgment directed the fund to be distributed as follows:

1. Certain amounts of costs to the attorneys for the respective parties, amounting to $1,153.08.

2. The payment of the aggregate amount of the labor liens, as above stated, to the bank, amounting to $1,268.53.

3. The full amount of the Goodrich lien, being the first one filed, amounting to $233.40.

4. To the plaintiff, the full amount claimed upon its lien, $3,987.84, being the second lien filed.

5. To the Barber Asphalt Paving Company, being the third lien in the order of priority, $933.61, upon its lien, being the balance of said funds.

After the judgment was entered a stipulation was entered into by the attorneys for the respective parties having or claiming any interest in the fund, consenting to the payment by the State in accordance with the directions contained in the judgment, and upon such payment releasing the State from any further obligation or liability to the respective claimants, the claimants agreeing among themselves that if the judgment should be reversed or modified on appeal, so as to alter the rights of the several parties, no party should look to the State to make good to him the advantage gained on the appeal, but to the parties who had received the money under the judgment.

None of the parties to this appeal is content with the judgment save the plaintiff and Goodrich. None of the appellants appeal from that part of the judgment which awards costs, with the possible exception of the bank. Its notice of appeal is from the judgment, and specifically to certain portions, but that part which awards costs is not specified. Neither does the Barber Asphalt Paving Company appeal from the part of the judgment which awards payment of the Goodrich lien, nor is that part of the judgment specifically referred to in the notice of appeal of the bank. Such of the labor lienors as appeal do, however, specifically name that part of the judgment which directs payment of the Goodrich lien, their contention being that the labor liens should be paid first.

The appellant Barber Asphalt Paving Company contends:

1. That the liens filed before the assignment should be first paid in the order of their priority, and that the trial court erred in directing the amount of the labor liens to be paid to the bank.

I am unable to see how the bank can avail itself of the rule of priority of labor liens, because the bank does not stand in the shoes of the labor lienors. Liens for material existing before the assignment became effective could not be affected as between the bank and such prior lienors by the subsequent filing of liens for labor.

2. The labor lienors contend that their liens are superior to both the assignment and the liens for material. That claim is founded upon sections 5 and 25 of the Lien Law (Consol. Laws, chap. 33 [Laws of 1909, chap. 38], as added by Laws of 1911, chap. 873), the latter of which gives laborers for daily or weekly wages preference over all other lienors having liens arising under the same contracts pursuant to the Lien Law, without reference to the time when such laborers shall have filed their notice of lien. A similar provision is also contained in section 13 of the Lien Law.

It is contended on behalf of the bank, the assignee of the moneys under the contract from the State, that the provisions of the Lien Law giving the labor liens a preference do not apply to such an assignment, citing in support thereof *Riverside Contracting Co.* v. *City of New York* (218 N. Y. 596). That case seems to so hold, though it should be noted the assignment there was absolute, while here it is not. It, like the liens, is in the nature of security; one is created by contract, the other by operation of law.

But it is contended on behalf of the labor lienors that since their liens are superior to the liens for material, and the assignment is ineffective as to the latter, because filed subsequently thereto, the labor liens are entitled to be first paid out of the funds isolated or impounded by the filing of notices of lien before the assignment became effective.

Clearly the labor liens would be entitled to be paid first if there had been no assignment, regardless of priority of filing of the material liens, and that might be so if the fund did not exceed the amount of liens filed before the filing of the assignment, because if there was no surplus there would be

nothing to assign.   But here there is a surplus exceeding the amount of the labor liens, which was effectively assigned because of the neglect of the labor lienors to file their liens until after the filing of the assignment.   Under such circumstances the materialmen should not be prejudiced through the neglect of the laborers to file their liens timely.

3. While there is little or no dispute over the amount of the claims or value of the material or work, it is contended that as to some of the material no effective lien against the fund can be sustained for the reason that it was not used in the improvement or furnished therefor within the meaning of the Lien Law.

It appears that nineteen cars of cement furnished by the plaintiff were not used by the contractor in the construction of the road, but were resold by him and used elsewhere, and that eleven cars were likewise not used in the work, but were actually taken back by the plaintiff.   The Barber Asphalt Paving Company raises no question as to the plaintiff's right to a lien therefor, but the other appellants do.

The plaintiff contends that it was not necessary that the materials should actually go into the work to entitle it to a lien therefor, but that a delivery to the contractor for that purpose is a furnishing within the meaning of the statute; and, furthermore, that as to the nineteen cars there is nothing to show that the moneys received by the contractor before the lien was filed were not applied in payment thereof, the notice of lien being for a balance due after the sale had been effected and after moneys had been paid exceeding in amount the purchase price of the nineteen cars.   I think we may assume under the circumstances that the nineteen cars were paid for out of the moneys paid before the notice was filed, and were not included in the balance for which the lien was filed.

As to the eleven cars the situation is different.   They were among the last shipments.   They had not even reached their destination; under the terms of the contract the price was fixed f. o. b. at the point of delivery.   They were consigned to Corwin's Switch, but owing to the crowded condition of the switch they were not delivered there, but left at some point along the line of the railroad.   The contractor had been taken

ill. The work had been abandoned for the winter and was later taken over and completed by the State. The asphalt company finally succeeded in getting back these cars. The material undoubtedly would have deteriorated, and perhaps been worthless, if permitted to remain unused or uncared for, and it disposed of the material elsewhere. It seeks to lien the fund for the difference between the contract purchase price and what was realized. I am not aware of any decision which goes to the extent of holding that a lien may be had upon the funds earned under a contract with the State or municipality for a public improvement, under such circumstances.

Section 5 of the Lien Law (as added by Laws of 1911, chap. 873) provides that a person performing labor for or furnishing materials to a contractor, his subcontractor or legal representative, for the construction of a public improvement, pursuant to a contract by the contractor with the State or a municipal corporation, shall have a lien for the same upon the moneys applicable to the construction of the improvement, to the extent of the amount due or to become due on the contract, upon filing a notice of lien as prescribed by the statute.

Section 12 (as added by Laws of 1911, chap. 873), which was in effect when notices of these liens were filed, provided that the notice should give " a description of the public improvement upon which the labor was performed and materials expended."

Since these liens were filed, this section has been amended so as to include materials actually manufactured for, but not delivered to, such public improvement. (Laws of 1916, chap. 507, § 6.)

I think this material did not actually or constructively enter into or become a part of this improvement, within the provisions of the Lien Law, and that the lien as to this item should not be sustained.

4. Some of the labor lienors have not appealed; others failed to file a *lis pendens;* and the Barber Asphalt Paving Company claims that none served answers upon it. Neither did the Barber Asphalt Paving Company serve answers upon them, so it is claimed. Although the record before us contains the usual certificate that it contains all the evidence, it evidently

does not. Many of the exhibits are not in the record, some of them important ones. There is nothing in the record to show whether answers were served or not on codefendants, and only the answers of the asphalt company and the bank are in the record.

I am not disposed to regard the point of failure to serve answers available to any of the appellants at this time. The evidence of all the parties was received without making any such objection as to the pleadings. While at one stage of the trial, near its close, a motion for dismissal was made on behalf of the asphalt company to dismiss one of the liens for failure to serve an answer on it, and afterward the same objection was raised in a general way as to the others, no ruling was insisted on and none made. As has been stated, there is nothing in the record as to the nature of the absent answers or whether they were served or not.

But the question of the failure to obtain orders and file *lis pendens* is more serious. While the evidence upon that subject is incomplete, as there is almost a total failure to print any of the exhibits, the findings show that nearly all of the labor liens have expired.

From the statement prefixed to the printed record it appears that the action was begun by the service of a summons and complaint upon the appellant, who prepared the case, on the 19th of February, 1916. It was tried at the June, 1916, Equity term. The decision is dated January 22, 1917, and the judgment seems to have been entered on or about the same date.

Several of the lienors never filed any notice of pendency of the action, and the latest order extending liens of certain lienors was filed October 16, 1915, which extended that lien for a period of six months from that date. The lienors Benson and Forsaith do not appeal. It is not clear as to two or three others whether their liens were kept alive or not.

Section 18 of the Lien Law (as added by Laws of 1911, chap. 873) provides that a lien under a contract for a public improvement shall not continue for a longer period than three months from the time of filing the notice of such lien, unless an action is commenced to foreclose the lien within that time and a notice of pendency is filed as therein stated,

or unless an order of a court or judge, as therein provided, be made. Such an order continues the lien for a period not exceeding six months.

While this section was amended in 1916, by providing that if a lienor be made a party defendant in an action to enforce another lien, and the plaintiff or such defendant has filed a notice of pendency of the action within the prescribed time, the lien of such defendant shall thereby be continued, that amendment did not take effect until July 1, 1916. (Laws of 1916, chap. 507, §§ 10, 18.)

I think the liens of such lienors as failed to file *lis pendens* expired after the expiration of the time for which the final order continued the same. (*Bradley & Son* v. *Huber Co.*, 146 App. Div. 630; affd., 210 N. Y. 627.) It may, however, be that the question was not sufficiently raised at the trial. (*Romeo* v. *City of Yonkers*, 126 App. Div. 402; affd., 196 N. Y. 546.) But if I am right that none of the fund is available to the labor lienors, as before stated, it is an empty question as to whether the labor liens have expired.

The judgment should be modified by directing payment:

1. Of the costs as provided in the judgment.

2. The liens for which notice was filed prior to the filing of the assignment.

3. The remainder of such ·fund to the bank under its assignment.

The findings should be modified and new findings made in conformity with this opinion.

As so modified the judgment should be affirmed, without costs to any party upon this appeal.

All concurred, FOOTE, J., in result in a memorandum; HUBBS, J., not sitting.

FOOTE, J. (concurring):

Before the labor liens were filed the assignment of the fund to the bank became effective and placed the fund beyond the reach of liens of any kind thereafter filed. (*Riverside Contracting Co.* v. *City of New York*, 218 N. Y. 596.)

The labor liens never became liens on the fund either as to the bank or the other lienors. The statute which makes them superior to liens of materialmen, although filed later,

has no application where, as here, they were filed too late to reach the fund at all. As to them there was no fund to which their liens could attach. The statute does not make them liens upon the prior liens, and if they do not become liens on the fund, then they are ineffective as to everybody.

I think the labor liens must be entirely disregarded in the distribution of the fund.

Upon reargument, findings and judgment modified in accordance with opinion, and as so modified affirmed, without costs of this appeal to any party.