CHARLES B. PAINE, as Receiver of the HALLOWELL GRANITE
WORKS, Respondent, *v.* CITY OF NEW YORK and Others,
Defendants, Impleaded with VULCAN RAIL AND CONSTRUC-
TION COMPANY and Others, Respondents, and MAX RADT
and SHERMAN NATIONAL BANK, Appellants.

First Department, February 6, 1920.

Liens — priority — mechanic's lien and prior assignment of balance
due under construction contract — creditors' agreement for
completion of contract — lien of assignee for advances made.

A contractor with the city of New York becoming financially embarrassed,
entered into an agreement with some of his creditors, including a bank,
under which he assigned the balance due under his contract with the city
to the vice-president of the bank and such assignment was duly filed
pursuant to the provisions of section 16 of the Lien Law. Under the
arrangement so made a committee of three creditors was to complete the
work and the money to be received by the assignee was to be used, *first*,
in payment to a granite company for all granite furnished by it; and,
*second*, to pay for the work and material necessary to finish the job and
then to pay the creditors signing the agreement *pro rata*. Under the
agreement the assignee was to pay out the money received by him from
the city on the orders of the committee and was to lend his " aid and
assistance when requested." In carrying out the creditors' agreement
the original contractor and the assignee entered into a new agreement with
the granite company binding themselves, jointly and severally, to pay for
all granite thereafter delivered, and this agreement was recited in the
creditors' agreement. After the granite company had delivered all the
granite and when the work was practically complete it filed a mechanic's
lien for a balance due, but inserted the name of the original contractor only
in the notice. Thereafter other liens were filed by other creditors. In
completing the contract the assignee paid out a large sum in excess of
that received by him from the city and on the completion of the contract
there remained due from the city a sum less than the amount due the
granite company and that advanced by the assignee. In an action by
the granite company to foreclose its lien which was consolidated with an
action by the assignee to establish his lien under the assignment,

*Held,* that it was not necessary for the assignee to file the creditors' agree-
ment with the assignment from the contractor to perfect his lien, as
section 16 of the Lien Law requires only the filing of the assignment;

That in consideration of the creditors' agreement and the personal agreement
between the granite company and the assignee, the claim of the granite
company was entitled to priority over that of the assignee;

First Department, February, 1920.     [Vol. 190.

That the assignee was justified under the creditors' agreement in making advances in excess of the amount received by him from the city, and his lien for money so advanced was superior to a mechanic's lien subsequently filed as to all moneys advanced prior to the filing of the mechanic's lien; and he should be reimbursed out of the balance in the hands of the city subject to the superior right of the granite company;

That the mechanic's lien filed by the granite company was not invalidated by the fact that the notice of lien named only the original contractor as the one against whom the lien was filed, for section 12 of the Lien Law provides that the failure to state correctly the name of a contractor shall not invalidate the lien.

APPEAL by the defendants, Max Radt and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 19th day of February, 1919.

The judgment from which the appeal is taken established the lien of the plaintiff for material furnished and also the liens of certain other defendants, and disallowed the claims of the said appellant defendants by reason of certain assignments of moneys due on a contract with the city of New York.

*Samuel Seabury* of counsel [*M. M. Leichter* with him on the brief; *Weissberger & Leichter*, attorneys], for the appellants.

*Walter H. Thacher*, for the plaintiff, respondent.

*Charles F. Hulseman* of counsel [*William Stanley Miller*, attorney], for the respondent Vulcan Rail and Construction Company.

*Walter H. Merritt* of counsel [*Carter, Ledyard & Milburn*, attorneys], for the respondent Charles C. Rumsey.

*Howard G. Wilson* of counsel [*John C. Wait*, attorney], for the respondent A. E. Castle, Inc.

*Jacob J. Aronson* of counsel [*Thomas P. de Graffenried*, attorney], for the respondent Carl Hartzelius.

*Samuel Levy* of counsel [*Reuben Rodecker* with him on the brief; *Arnstein & Levy*, attorneys], for the respondent Henry Contracting Company.

SMITH, J.:

The Hallowell Granite Company furnished the granite for the imposing entrance at the Manhattan end of the Manhattan bridge. The contract with the city was made by William P. Seaver who, after the work was partly finished, became financially embarrassed, and an arrangement was made by him with some of his creditors, including the Sherman National Bank and Max Radt, vice-president of that bank, by which Seaver should assign the balance due from the city to Radt and a committee of three creditors should complete the work, the money so received by Radt from the city to be used *first* in payment to the Hallowell Company of the entire amount for granite furnished; *second,* to pay for the work and material necessary to finish the job and then to pay the creditors signing the above agreement, including the Sherman National Bank, *pro rata.* There was also a provision that any surplus should be paid to Seaver.

In carrying out this creditors' agreement, Seaver and Radt entered into a new contract with the Hallowell Company by which Seaver and Radt agreed to pay the Hallowell Company $197,427 for granite to be delivered. There is some question as to whether this contract was delivered before the execution of the creditors' agreement, but it is sufficient to say the creditors' agreement recites that the Radt-Hallowell agreement had been made.

The creditors' agreement was executed by about one-half of the creditors and the assignment by Seaver to Radt of the balance due on the city contract was executed and duly filed in the proper offices, in accordance with the Lien Law, July 17, 1915.

The work was thereafter continued by the committee until all of the granite had been delivered by the Hallowell Company and the contract with the city practically completed, when the Hallowell Company filed a mechanic's lien September 21, 1916, for $44,854.24, the balance due for granite delivered, and other liens were thereafter filed, including an assignment by Radt to the Sherman National Bank of $25,000 of the moneys due Radt from the Seaver assignment which arose as follows: The Sherman National Bank had advanced money to Seaver, Radt having as vice-president made the loans. Radt

claiming to have obtained additional money from the bank, for the purpose of securing it, made the assignment of $25,000 (Radt's Exhibit D), dated and filed September 25, 1916. By reason of this assignment the bank is making a claim on the contract money.

After the filing of the Hallowell lien the committee ceased acting under the agreement, but as there was some work to be done in completing small matters and cleaning up the job Radt did that work, paid some $10,000 for it personally, and so made available for all the parties interested the balance of $56,092.06 in the city's hands applicable to the Seaver contract.

Under the terms of the creditors' agreement, Radt was to receive payments from the city as the work progressed and pay it out on orders of the committee for the work and he was to lend his " aid and assistance when requested." Radt received from the city at different times $264,423.35 and paid out on orders of the committee $291,885.48 before the Hallowell lien was filed. These figures exclude from both sides of Radt's accounts the payment of three notes of $7,500 each at the Sherman National Bank, and the receipt of the proceeds of three notes discounted at said bank, but they show that Radt paid out under the creditors' agreement $27,462.13 more than he received. This excess Radt claims to have paid under the clause of lending " aid and assistance when requested," and also that that payment was necessary and that the committee and Radt were under obligation to complete the work under the Seaver contract.

The parties in interest not being able to agree on a distribution of the $56,000 balance due on the city contract, the plaintiff, who had been appointed receiver of the Hallowell Company, commenced this action to foreclose its mechanic's lien, making all lienors parties defendant and Radt commenced an action to establish his lien by virtue of the assignment to him and to adjudicate the amount due him thereunder. These two actions were consolidated and continued under the title of the first action, Radt's complaint in his action being treated as his answer in this action.

The trial court has found that the Radt assignment was regularly filed, but it has held that Radt can take nothing

by reason of any payment in excess of the amount received by him from the city and, therefore, has no claim against the balance in the city's hands.

The trial court has disposed of the claims of the different parties, and their adverse interests will be considered as far as necessary. Defendant Radt's rights and claims in the matter rest on his assignment from Seaver, taken together with the so-called creditors' agreement. This assignment was executed on July 16, 1915, and filed on the following day, a year and more before any other claim was filed. The creditors' agreement was not filed with the assignment, but there is no statutory requirement that it should be so filed. Section 16 of the Lien Law (as added by Laws of 1911, chap. 873)* requires only the filing of the assignment which gives all the notice required to put any one interested on inquiry. Furthermore the trial court has found that the assignment was duly and regularly filed and no exception has been taken to such ruling by any of the parties and no one is in position to raise the point.

Radt claims to have paid out upwards of $27,000 more than he received under the creditors' agreement, and the proofs show that he did so pay at least that sum in excess of the amounts received. The position is taken by the plaintiff and certain defendants that any excess payments made by Radt were voluntary on his part and not even authorized by the creditors' agreement. This would not seem to be the intent of the parties to the creditors' agreement. The agreement required Radt to give his " aid and assistance " when requested. Radt was a banker and the natural " aid and assistance " he could give and that the parties contemplated he would give was counsel and money. As no amount of money was mentioned, probably Radt *could not be compelled* to advance any given sum, but when he should be " requested " by the committee to make advances he would *be authorized* by the agreement to do so, and should be protected to the extent of the advances made in carrying out the provisions of the contract.

The trial court has held that " Radt's sole connection

---

* Since amd. by Laws of 1916, chap. 507.— [REP.

with the plan outlined in the agreement was to perform the duty of collecting and paying out, under the direction of the trustees, the moneys received from the City." It would seem that this conclusion ignores the feature referred to in the preceding paragraph and also the fact that the trustees were under the obligation to complete the Seaver contract and so were interested in the fund assigned to Radt to furnish the means of finishing the work and that when in the process of so doing the trustees requested Radt to advance moneys and Radt did advance moneys in excess of amounts received from the city, they would both be protected by the assignment. There is the further fact to be considered that both the trustees and Radt were acting under an assignment that gave them all the money coming to Seaver from the contract, and should they at any time, in the furtherance of the contract, pay out more than they had received at that time, they were doing so in reliance on the assignment and for the benefit of all interested.

It should, therefore, be held that Radt was justified in making the advances in excess of the amount received by him and that he should be reimbursed out of the balance in the hands of the city in so far as not prevented by other considerations. Radt further claims that he should be reimbursed for the excess paid by him before the plaintiff should receive anything on its claim. He is met at the outset by the terms of the creditors' agreement. He would support his claim by certain clauses of that agreement, but he ignores other paramount clauses of the same agreement. The whole tenor of the agreement shows that the plaintiff's claim was to be paid in full before any other claims were paid, even before other work necessary to complete the Seaver contract and certainly before any advances Radt might make. This is a primary and direct reason why plaintiff's lien should be given preference. A secondary and indirect reason also exists. Should Radt individually receive anything on account of his advances, he would still be liable to pay all of the plaintiff's claim by reason of his personal contract to pay the plaintiff, so that the same result would be attained in the end.

The trial court having found that the plaintiff's lien was

regular in all particulars and that there was due on its contract the sum of $44,854.24, in this regard the judgment appealed from is affirmed.

In view of the conclusion we have reached that the defendant Radt is entitled to enforce his claim for $27,000 against the amount in the hands of the city after the payment of the plaintiff's claim, and in view of the fact that there will be in the hands of the city after the payment of the plaintiff's claim only about $11,000 or $12,000, it is unnecessary to discuss the claims of the other defendants.

The judgment should, therefore, be modified by allowing the claim of the defendant Radt to the balance after the payment of the plaintiff's claim.

CLARKE, P. J., and DOWLING, J., concur.

LAUGHLIN, J. (concurring):

The appellants predicate their claim for a reversal upon an assignment in writing of the moneys due and to grow due under the contract between Seaver and the city to the appellant Radt, which assignment was in writing and bears date July 16, 1915, and was executed and filed before the lien sought to be foreclosed herein by the plaintiff was filed. The assignment is absolute in form and recites a good and valuable consideration; but the evidence shows that it was intended as security for moneys to be advanced for the completion of the contract work. Such an assignment takes precedence as to moneys actually advanced, and a mechanic's lien subsequently filed is subordinate to a claim for advances made thereunder before the filing of the lien, but not with respect to subsequent advances. (*Standard Sand & Gravel Co.* v. *City of New York,* 172 App. Div. 80; affd., 224 N. Y. 687; *Giant Portland Cement Co.* v. *Barber Asphalt Paving Co.,* 187 App. Div. 581; *Wood* v. *Galway & Co.,* 186 id. 134.) But this claim is not only met by proof of advances prior to the filing of the lien, but also by proof of the plaintiff that, prior to such assignment to Radt and on or before the 20th of March, 1915, an agreement theretofore existing between the Hallowell Granite Works, of which the plaintiff is the receiver and assignee, and Seaver, for furnishing the material in the

performance of Seaver's contract with the city, was canceled and a new agreement made between said Hallowell Granite Works, as party of the second part, and the appellant Radt and Seaver, as parties of the first part, by which the Hallowell Granite Works agreed to furnish to them the undelivered material covered by the former contract, at a reduced price, and they *jointly* and *severally* agreed to pay the Hallowell Granite Works therefor. It was then understood and agreed that Radt would receive the assignment which was subsequently made to him. By that agreement Radt became a contractor and he stood, so far as the Hallowell Granite Works was concerned, and by virtue of the obligation being joint and several, as a contractor against whose interest the Hallowell Granite Works had a right to file a lien for the materials furnished and delivered to him and Seaver under its contract with them. The notice of lien names Seaver, only, as the contractor, but still I think it was valid as against the interest of Radt, in view of the provisions of section 12 of the Lien Law (added by Laws of 1911, chap. 873, as amd. by Laws of 1916, chap. 507), which provides that the failure to state correctly the name of a contractor or subcontractor shall not affect the validity of the lien. It names one of the contractors, and the formal agreement shows that Radt also was a contractor. If, therefore, the contention of the appellants that the court erred in holding the assignment from Seaver to Radt was without consideration, and that Radt obtained no beneficial interest thereunder, were sustained, still that would not, I think, require a reversal, for the lien could be sustained as against both Seaver and Radt as contractors. The appellant bank claims under an assignment from Radt after the lien of the Hallowell Granite Works was filed, and its claim is, therefore, subordinate to the mechanic's lien.

The trial court found that the Henry Contracting Company duly filed a valid lien on the 22d day of September, 1915, but that the lien was discharged by the giving of an undertaking by the defendant Radt with the Casualty Company of Maryland as a surety, and notwithstanding the fact that the principal and surety were parties to the action, the court awarded no judgment against them on the bond. Since, however, the Henry Contracting Company did not appeal, it

must be left to its remedy by bringing an action on the bond. The liens of the other lienors were filed after the filing of the lien for the foreclosure of which this action was brought, and the evidence satisfactorily shows that Radt had theretofore advanced the sum of $26,000, at least, towards the performance of the contract work. His claim for those advances exceeds the balance of the fund after the deduction of the claim of the plaintiff, and since they were made in good faith under the assignment to him, and under the creditors' agreement to carry into effect the purpose thereof, and before the liens were filed, he is entitled to a preference therefor as against such lienors. (*Standard Sand & Gravel Co.* v. *City of New York, supra; Giant Portland Cement Co.* v. *Barber Asphalt Paving Co., supra; Wood* v. *Galway & Co., supra.*)

On these grounds I concur with Mr. Justice SMITH.

SMITH and PAGE, JJ., concur.

Judgment modified as directed in opinion. Settle order on notice.