ARROW IRON WORKS, INC., Plaintiff, *v.* HARRY V. GREENE and Others, Defendants.

Supreme Court, New York County, December 10, 1930.

*J. B. Lindner*, for the plaintiff.

*Mackey & Marchisio* [*R. J. Mackey* of counsel], for the defendant Bank of Yorktown.

*Salter & Steinkamp* [*W. C. Allen* of counsel], for the defendant Rees-Volckman & Co.

*Phillips & Avery* [*Talbot M. Malcolm* of counsel], for the defendant Empire Brick and Supply Company.

*G. G. Lake,* for the defendants A. & O. Pardi.

*S. L. Schwartz* [*N. Lewis* of counsel], for the defendant Feinberg Glass Company.

*I. Fellerman,* for the defendant Lexington Sash and Door Corporation.

*E. M. Ostrow,* for the defendant J. J. Fischer & Company.

*E. C. O. Thomas* [*A. H. Printz* of counsel], for the defendant Lawton Stephens Company.

*Levy, Kraus & Leman* [*A. J. Rosenblum* of counsel], for the defendant David Lupton Sons.

*W. H. E. Jay, Jr.,* for the defendant Invincible Weather Guard Company.

*Noble, Morgan & Scammell* [*W. F. Berghold* of counsel], for the defendants Richey, Brown & Donald.

*M. M. Helfgott,* for the defendants Koenigsberg and National Surety Company.

*L. M. Emmett,* for the defendants Gerace Bros. and Castagna.

CALLAHAN, J.   Action to foreclose a subcontractor's lien on work done in connection with the erection of a building for the Department of Mental Hygiene of the State of New York.   According to the last certificate of the State Architect, the general contractor had executed approximately ninety-one per cent of the work required by the contract when he defaulted.   The defendant surety company, pursuant to the contractor's bond, thereupon completed the work at the request of the State.   In accordance with the provisions of the contract, the State had retained at the time of each payment fifteen per cent of the amount certified by the architect as the value of the work performed.   This retained sum was not payable to the contractor until he had finished the work and had furnished satisfactory evidence that there were no outstanding liens or claims for material furnished or labor performed on the work.   Shortly prior to the default and during a period thereafter a number of subcontractor's liens were filed.   Some of these liens were discharged by order of court after the deposit of certified checks with the State. Prior to the time of filing any of the liens involved, an assignment was executed by the contractor to defendant Bank of Yorktown as collateral security for money loaned.   This assignment was filed with the State pursuant to section 16 of the Lien Law (as amd. by Laws of 1930, chap. 859).   It purported to transfer to the bank all of the con-

tractor's interest in any of the moneys due or to grow due him under the contract. The amount expended by the surety company in completing the work was slightly less than the nine per cent computed by the State as the costs of the unfinished work at the time of the last certificate. There is at present in the hands of the State the aggregate of the fifteen per cent retained percentages, the item of nine per cent cost of unfinished work and a small sum for certain extras.

The surety company's claim for the cost of completion is based on the theory that it became subrogated to the rights of the State. This right is well recognized. (*Laski* v. *State*, 126 Misc. 360; affd., 217 App. Div. 420; affd., 246 N. Y. 569; *Prairie State Bank* v. *United States*, 164 U. S. 227.) Whether or not this right of subrogation gives the surety company priority over the mechanic's lienors is not so clear. It seems that the State would have priority over lienors if it had completed the work itself. The contract so provided. Subrogation, however, is an equitable doctrine, and, if the subcontractors had not furnished the labor and materials represented by their liens, the surety would have been compelled to expend larger sums in completion. Therefore, equitably, the lienors have some claim for precedence. Furthermore, as all the provisions of the contract applicable to its principal also apply to the surety, it would be required to establish that all subcontractors were paid before becoming entitled to receive its money.

The consideration of the rights of the assignee bank requires a separate determination with relation to the claims of the lienors and those of the surety, both with respect to the items of retained percentage and the balance of nine per cent. The assignee took only such rights as its assignor, the contractor, had. As to sums it had actually advanced to the contractor, it acquired, upon complying with the statutory requirements of filing, an absolute title to any sum due and payable to the contractor. Such a right would be superior to those of subsequent lienors as to all sums advanced at the time the liens were filed. (*Riverside Contracting Co.* v. *City of New York*, 218 N. Y. 596; *Paine* v. *City of New York*, 190 App. Div. 681.) The bank's claim was not based on its right to a lien, but its title to the fund was dependent upon the terms and force of its assignment. A lien can only be acquired by one furnishing material or labor, and is not assignable. As to these claims I will assume that provision requiring the consent of the State to validate assignments was for the State's benefit and it had been waived. However, the only moneys which the assignment affected were the sums due to the contractor at the time of its execution and those sums which became due. When the contractor defaulted, his assignee stood in the shoes of a defaulting contractor. Under the contract, the

fifteen per cent fund in the hands of the State did not become due until the completion of the work and the production of evidence that there were no liens or claims. As this requirement was never complied with by the general contractor, the fifteen per cent never became due to him, and the assignment did not become effective as to such sums. Nor can it be said that the provision for retained percentages was solely for the benefit of the State. A reading of the general conditions of the contract with relation to subcontractors indicates otherwise. In any event, as the rights of the bank depend on the terms and force of its assignment and by its terms it did not affect the reserved percentage, I find that this money is first to be applied to the payment of mechanics' liens. As the liens exceed the amount of such retained percentage, it is not necessary to determine which of the remaining claimants would be entitled to the balance thereof. As to the nine per cent, which was the estimated unearned portion of the contract price at the time of the general contractor's default, it is clear that it never became due to the general contractor, because he defaulted. It, therefore, was not affected by the assignment, and is available to the claimants other than the assignee. If the fifteen per cent is less than sufficient to pay the mechanics' liens, those lienors unpaid would have first claim to the nine per cent balance in the hands of the State, as they have preference equitably over the claim of the surety, as previously indicated. The surety would next prevail as to this fund under its subrogated right of the State to receive the cost of completion before any of this balance became due to the contractor.

Whatever might be the effect of the waiver by the State of its right to refuse to recognize an assignment as to sums due prior to the default, it is clear that the State could not so waive as to moneys becoming due thereafter without releasing the surety. (*Prairie State Bank* v. *United States, supra.*) As to the subcontractors who filed notice of lien prior to June 18, 1929 (the date of filing the *lis pendens*), but who failed to obtain orders extending their liens, I hold that their liens have lapsed. Filing of liens or orders extending same in the offices of the State Comptroller and either the office of the Department of Public Works or the Department of Mental Hygiene is held sufficient. Liens filed after June 17, 1929, required no order of extension, due to commencement of the present action. The amounts of the various subcontractors' liens are fixed as indicated on the trial. Plaintiff is awarded costs and an extra allowance of $200, defendant surety company, costs not to exceed $100, and other lienors appearing on the trial whose liens have been allowed, costs not to exceed $50 each. Interest is allowed on the principal sums fixed. If plaintiff's lien, plus interest and costs,

exceeds the amount deposited to discharge the same, plaintiff may share in the fund before the court to the extent that such part of the balance unpaid consists of costs and the allowance granted. I find as a fact that some of the moneys borrowed by the general contractor from the defendant bank were used in the performance of this contract up to the time the general contractor ceased work. I further find that it is impossible to determine from the proof whether all of the moneys so borrowed were so used or to estimate the precise sum so used. Assuming, however, that it appeared that all of the moneys advanced by the bank were used by the contractor in doing this work, such fact would not, in my opinion, alter the situation. The assignee was not a mechanics' lienor as described by the statute. The most that the facts assumed would give it would be some equitable claim because of the use of its funds in the work. On the equities alone, as between the parties, it appears to me that the mechanics and materialmen would have at least equal, if not superior, claims to those of the bank. In addition, it clearly is the policy of this State to protect such lienors in their claims.

Submit findings and judgment in accordance with the foregoing.